## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LORI O'NEILL,                          :        Civil No.  4:24-CV-2156
                                       :
     **Plaintiff**                     :
                                       :
v.                                     :        (Magistrate Judge Carlson)
                                       :
FRANK BISIGNANO,[1]                    :
Commissioner of Social Security,       :
                                       :
     **Defendant.**                    :

### MEMORANDUM OPINION

### I.    Introduction

This case is striking in a number of respects. Lori O'Neill suffers from what imaging has revealed to be marked, bilateral lumbar stenosis and advanced degenerative disc disease. (Tr. 437-38). While O'Neill's treatment records were somewhat sporadic, in December of 2023 her treating nurse practitioner stated that "she has very advanced scoliosis as well as lumbar stenosis," and sought pain management for her noting that if pain management did not relieve her severe chronic pain, "she would require a very large fusion to correct her stenosis and

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

scoliosis." (Tr. 508). Two months later, in February of 2024, this treating source stated that: "Lori L Oneill has been under my care and due to the patient[']s advanced scoliosis, it is advisable that the patient lift no more than 10 pounds, avoid long periods of sitting, standing and walking. Avoid crouching, bending, twisting, turning, etc." (Tr. 509). Thus, O'Neill's treating caregiver opined that she could only perform a limited range of sedentary work with restrictions on her ability to stand, sit, walk, crouch, bend, twist and turn.

Beyond this treating source opinion, which imposed strict limitations upon O'Neill's ability to work, every other medical expert who considered O'Neill's case stated that there was insufficient evidence to establish the severity of her impairments. (Tr. 76-88). Thus, no less than four state agency experts who examined O'Neill's case called for further development of the medical record before any disability determination could be made. And, in fact, O'Neill specifically requested that the Administrative Law Judge (ALJ) follow this state agency expert consensus and order consultative examinations in this case before making a disability determination. (Tr. 73).

The ALJ rejected all of these medical opinions; declined to further develop the record even though every state agency expert indicated that further medical development was necessary; fashioned a residual functional capacity assessment for

2

O'Neill which was unmoored to any medical opinion; and denied this claim.(Tr. 15-30).

On this striking set of facts, we are reminded of a basic tenet of Social Security practice; namely:

> ALJs have a duty to develop a full and fair record in social security cases. See Brown v. Shalala, 44 F.3d 931, 934 (11th Cir.1995); Smith v. Harris, 644 F.2d 985, 989 (3d Cir.1981). Accordingly, an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits.

Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995).

In the instant case, the ALJ's decision to ignore every medical opinion; discount the state agency expert consensus that further development of the record was necessary to informed decision-making; refuse the claimant's request for consultative examinations; and fashion an RFC based upon the rejection of every medical opinion on record, runs afoul of this basic duty to develop a full and fair record. Therefore, this case will be remanded for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case

On September 27, 2021, Lori O'Neill filed an application for disability benefits under Title II of the Social Security Act, alleging disability beginning March 16, 2020. (Tr. 18). In this application, O'Neill alleged that she was disabled due to

3

an array of physical and mental impairments, including generalized osteoarthritis and lumbar degenerative disc disease as well as anxiety. (Tr. 21). O'Neill was born on July 9, 1971, and was 48 years old, which is defined as a younger individual under the Commissioner's regulations, on the alleged disability onset date. During the pendency of these proceedings, her age category changed to closely approaching advanced age. (Tr. 29).

With respect to these impairments, while the medical record was somewhat sporadic, on October 26, 2021, O'Neill submitted an Adult Function Report which identified a constellation of impairments including 15-minute limitations on her ability to sit and stand and further limitations on her ability to bend and concentrate due to fatigue. (Tr. 210-17). O'Neill attributed many of these physical limitations to ongoing, chronic back pain. (Tr. 204-05). These subjective reports were corroborated by November 2021 treatment notes from the Altoona Arthritis and Osteoporosis Center which also documented anxiety along with back and knee pain on O'Neill's part.(Tr. 331, 382).

By 2023, medical tests confirmed that O'Neill suffered from severe lumbar stenosis and degenerative disc disease, and her caregivers noted a significant decline in her condition. Thus, on June 3, 2023, O'Neill was seen for a follow up appointment treating her anxiety and chronic low back pain. (Tr. 406). By July 19,

2023, O'Neill reported continuing anxiety long with worsening back pain which limited her to five-to-ten minutes standing at a time. (Tr. 408).

On August 1, 2023, the 611 MRI-CT scanning center described the results of imaging examinations conducted on O'Neill. (Tr. 437-38). This report described O'Neill as suffering from bilateral severe stenosis with apparent lumbar disc extrusion. According to the report O'Neill experienced both marked stenosis and advanced disc disease. (Id.) O'Neill's caregivers then described a cascading array of symptoms exereinced by the plaintiff through the Fall of 2023. On October 2, 2023, the plaintiff was diagnosed with lower left side sciatica. (Tr. 493). By November 21, 2023, it was reported that she suffered from chronic, worsening lower back pain along with left leg pain and weakness. (Tr. 450, 454, 460-61).

By December 2023, these conditions were exacerbated by migraine headaches which O'Neill experienced with increasing frequency, suffering two to three migraine attacks each week. (Tr. 493). On December 26, 2023, O'Neill's primary caregiver, CRNP Edwin Hoffman said of O'Neill that "she has very advanced scoliosis as well as lumbar stenosis," and sought pain management for her noting that if pain management did not relieve her severe chronic pain "she would require a very large fusion to correct her stenosis and scoliosis." (Tr. 508). These impairments continued to worsen in 2024. By January 16, 2024, it was noted that

5

O'Neill suffered from a burning, stabbing left side pain which she rated at 8-9/10. O'Neill reported that "for the past month she is only able to sit for one minute then has to change positions." (Tr. 505).

Given this incomplete, but significant, clinical history five medical sources opined regarding O'Neill's impairments. Four of these sources were state agency experts who unanimously agreed that there was insufficient information to assess the severity of O'Neill's impairments, an expert consensus which called for further development of the record. For example, on April 19, 2022, Dr. Tiffany Leonard opined that: "The available medical evidence is insufficient to assess the severity of functional limitations resulting from [O'Neill's] mental health impairments." (Tr. 80). These findings were echoed on April 26, 2022, by Dr. John Bertolino who stated that there was "[o]verall insufficient evidence" to evaluate the severity of her physical impairments. (Tr. 81).

Later in 2022, two other state agency experts reached similar conclusions regarding the need to expand and further develop the medical record relating to O'Neill's physical and emotional impairments. For example, on November 10, 2022, Dr. Paul Taren stated that: "there is limited mental status data and no input from a mh [mental health] specialist, and the ongoing severity of impairment remains uncertain. There is insufficient evidence for a reliable psychological determination."

(Tr. 86). On December 6, 2022, Dr. Minda Uy-Barreta Bermudez made similar findings regarding the need to further develop the record relating to O'Neill's physical impairments, concluding that: "There is insufficient evidence on file to fully evaluate the current severity of all of [O'Neill's] physical allegations." (Tr. 85).

Thus, every state agency expert who assessed O'Neill's case agreed that there was a need to further expand and develop the medical record before any informed opinions could be made regarding the severity of her impairments.

The only other medical opinion statement came from a treating source. On February 27, 2024, O'Neill's primary caregiver, CRNP Edwin Hoffman stated that: "Lori L Oneill has been under my care and due to the patient['']s advanced scoliosis, it is advisable that the patient lift no more than 10 pounds, avoid long periods of sitting, standing and walking. Avoid crouching, bending, twisting, turning, etc." (Tr. 509). Thus, O'Neill's treating caregiver opined that she could only perform a limited range of sedentary work with restrictions on her ability to stand, sit, walk, crouch, bend, twist and turn.

It was against this medical backdrop that O'Neill's disability claim came to be heard by the ALJ on February 13, 2024. (Tr. 36-75). In the course of this hearing, citing the state agency consensus that the medical record needed to be expanded, O'Neill requested that the ALJ order consultative examinations. (Tr. 73). The ALJ

7

ultimately refused to further develop the record in this manner. In addition, O'Neill testified at this hearing, explaining that she needed to take numerous breaks while engaged in housework due to her pain. (Tr. 51). According to O'Neill her pain had become progressively worse over time, (Tr. 52), currently limited her to walking for only twenty minutes before she needed to rest, (Tr. 53), and required her to rest two to three times a day. (Tr. 54). A Vocational Expert also testified at this hearing. On cross examination, the expert acknowledged that if O'Neill was limited to sedentary work, required frequent breaks, suffered from lapses in concentration, and was otherwise restricted in her movements she would be unemployable. (Tr. 69-71).

Following this hearing, on March 13, 2024, the ALJ issued a decision denying O'Neill's application for benefits. (Tr. 15-31). In that decision, the ALJ specifically rejected the plaintiff's request for consultative examinations, a request which was supported by the state agency medical opinion consensus that further development of the medical record was necessary, finding instead that "there is no support or need" for such examinations. (Tr. 19).

The ALJ then concluded that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2025, and had not engaged in substantial gainful activity since March 16, 2020, the alleged onset date. (Tr. 21). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found

8

that O'Neill had the following severe impairments: generalized osteoarthritis and lumbar degenerative disc disease. (Id.)

At Step 3, the ALJ determined that these impairments did not meet or medically equal the severity of any listed impairments. (Tr. 23-24).  Between Steps 3 and 4, the ALJ then fashioned the following residual functional capacity (RFC) assessment for O'Neill:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally balance, stoop, kneel, crouch and climb ramps and stairs. The claimant can occasionally reach overhead. The claimant can never climb ladders, ropes or scaffolds. The claimant can never operate foot controls. The claimant can have no exposure to unprotected heights or moving machinery.

(Tr. 24).

In reaching this RFC determination, the ALJ rejected every medical opinion tendered in this case. At the outset, despite the fact that the four state agency experts unanimously agreed that further development of the factual record was necessary, the ALJ found that "there is no support or need" for expansion of the medical record through consultative examinations. (Tr. 19). The ALJ justified the wholesale rejection of this state agency expert consensus through the expedient of declaring all of these opinions unpersuasive in light of the after-acquired medical records from 2023 and 2024.

9

Yet these recent medical records documented severe impairments and contained a treating source opinion which was entirely inconsistent with the RFC adopted by the ALJ.  For example, on August 1, 2023, the 611 MRI-CT scanning center described O'Neill as suffering from bilateral severe stenosis with apparent lumbar disc extrusion. According to the report, O'Neill experienced both marked stenosis and advanced disc disease. O'Neill's caregivers then described a cascading array of symptoms experienced by the plaintiff through the Fall of 2023. By November 21, 2023, it was reported that she suffered from chronic, worsening lower back pain along with left leg pain and weakness. (Tr. 450, 454, 460-61). In December of 2023, these conditions were exacerbated by migraine headaches which O'Neill experienced with increasing frequency, suffering two to three migraine attacks each week. (Tr. 493). On December 26, 2023, O'Neill's primary caregiver, CRNP Edwin Hoffman said of O'Neill that "she has very advanced scoliosis as well as lumbar stenosis," and sought pain management for her noting that if pain management did not relieve her severe chronic pain  "she would require a very large fusion to correct her stenosis and scoliosis." (Tr. 508). These impairments continued to worsen in 2024 and by January 16, 2024, it was noted that O'Neill suffered from a burning, stabbing left side pain which she rated at 8-9/10. O'Neill also reported that "for the past month she is only able to sit for one minute then has to change positions." (Tr.

10

505). Given this clinical history, on February 27, 2024, O'Neill's primary caregiver, CRNP Edwin Hoffman stated that, "Lori L Oneill has been under my care and due to the patient[']s advanced scoliosis, it is advisable that the patient lift no more than 10 pounds, avoid long periods of sitting, standing and walking. Avoid crouching, bending, twisting, turning, etc." (Tr. 509).

Having relied upon the recent medical record to reject the state agency expert consensus opinion that the record needed to be further developed, the ALJ then found the treating source opinion which was based upon this clinical record was also unpersuasive. (Tr. 28). Thus, the ALJ's RFC determination was unmoored to any medical opinion, rejected every medical judgment, and refused a request supported by every state agency expert to further develop the medical record through consultative examinations.

Having made these findings, the ALJ concluded that O'Neill could return to her past work and could also perform other light exertional work in the national economy. (Tr. 28-30). Accordingly, the ALJ concluded that the plaintiff did not meet the stringent standard for disability set by the Act and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, O'Neill argues that the ALJ erred in refusing to order consultative examinations and in crafting an RFC which was entirely untethered to any medical opinion. After a review of the evidence, we agree

11

that the ALJ's failure to acknowledge the medical consensus endorsing expansion of the record, combined with the ALJ's decision to adopt an RFC which was bereft of medical opinion support and conflicted with the sole treating source opinion on record resulted in an erroneous disability determination. Therefore, we will remand this case for further consideration by the Commissioner.

## III.    Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial

14

review. Simply put, "this Court requires the ALJ to set forth the reasons for his

decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000).

As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "Burnett does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim

made here, based in part upon alleged inadequacies in the articulation of a claimant's

mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the

United States Court of Appeals recently addressed the standards of articulation that

apply in this setting. In Hess the court of appeals considered the question of whether

an RFC which limited a claimant to simple tasks adequately addressed moderate

15

limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . ." Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of

16

the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

**B. <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); <u>see also</u> 20 C.F.R. §404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3)

whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an

18

assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration

when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this

burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 433 (3d Cir. 1999).

## C. <u>The ALJ's Duty to Develop the Medical Record.</u>

There is a necessary corollary to these legal standards defining the role of the ALJ in disability determinations. As the Supreme Court has observed:

Although "[m]any agency systems of adjudication are based to a significant extent on the judicial model of decisionmaking," 2 K. Davis

21

& R. Pierce, Administrative Law Treatise § 9.10, p. 103 (3d ed.1994), the SSA is "[p]erhaps the best example of an agency" that is not, B. Schwartz, Administrative Law 469–470 (4th ed.1994). See id., at 470 ("The most important of [the SSA's modifications of the judicial model] is the replacement of normal adversary procedure by ... the 'investigatory model' " (quoting Friendly, Some Kind of Hearing, 123 U. Pa. L.Rev. 1267, 1290 (1975))). Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits, see Richardson v. Perales, 402 U.S. 389, 400–401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) . . . .

Sims v. Apfel, 530 U.S. 103, 110–11, 120 S. Ct. 2080, 2085, 147 L. Ed. 2d 80 (2000).

Consequently, it is a fundamental  basic tenet of Social Security practice that:

ALJs have a duty to develop a full and fair record in social security cases. See Brown v. Shalala, 44 F.3d 931, 934 (11th Cir.1995); Smith v. Harris, 644 F.2d 985, 989 (3d Cir.1981). Accordingly, an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits.

Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995).

Therefore, an ALJ has a responsibility to assist a claimant in fully and fairly developing the factual record relating to a disability claim. See Sanchez v. Comm'r of Soc. Sec., 271 Fed.Appx. 230, 233 (3d Cir. 2008). As part of this duty, "[t]he decision to order a consultative examination is within the sound discretion of the ALJ." Basil v. Colvin, No. CIV.A. 12-315E, 2014 WL 896629, at *2 (W.D. Pa. Mar. 6, 2014) citing Thompson v. Halter, 45 Fed.Appx. 146, 149 (3d Cir. 2002); 20 C.F.R. §§ 404.1517, 416.917. However, the exercise of this discretion is guided by settled

22

principles and is linked to an informed assessment of the evidence in each case.

Thus:

> An "ALJ's duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." Id. Other circumstances necessitating a consultative examination include situations where a claimant's medical records do not contain needed additional evidence, or when the ALJ needs to resolve a conflict, inconsistency or ambiguity in the record. See, 20 C.F.R. §§ 404.1519(a), 416.919(a).

Basil v. Colvin, No. CIV.A. 12-315E, 2014 WL 896629, at *2 (W.D. Pa. Mar. 6, 2014). See Rissmiller v. Colvin, No. CV 15-5731, 2016 WL 6107209, at *5 (E.D. Pa. Oct. 18, 2016). Therefore, a determination of whether a consultative examination is needed in a particular case is a discretionary judgment by an ALJ and is a judgment that should be firmly rooted in an assessment of the evidence as a whole. Ultimately, the ALJ's duty to develop the record requires a consultative examination when it is shown that the claimant has established that such an examination is needed to enable the ALJ to make the disability decision. See Thompson v. Halter, 45 Fed.Appx. 146, 149 (3d Cir. 2002); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5–6 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017).

It is against these legal guideposts that we assess the ALJ's decision in this case.

23

### D. **This Case Will Be Remanded.**

After a review of the record, we conclude that the ALJ's analysis in this case was flawed in at least two material ways. At the outset, the ALJ erred in refusing to authorize consultative examinations of O'Neill. The plaintiff specifically requested such examinations, and every state agency expert who reviewed this case agreed that there was insufficient evidence to make an informed disability determination, a medical consensus which called for expansion of the record through consultative examinations.

It is clear that "a determination of whether a consultative examination is needed in a particular is a discretionary judgment by an ALJ, and is a judgment that should be firmly rooted in an assessment of the evidence as a whole." Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *6 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017). However, in the exercise of this discretion, "circumstances necessitating a consultative examination include situations where a claimant's medical records do not contain needed additional evidence, or when the ALJ needs to resolve a conflict, inconsistency or ambiguity in the record." Basil v. Colvin, No. CIV.A. 12-315E, 2014 WL 896629, at *2 (W.D. Pa. Mar. 6, 2014). In addition, it has been held that it is error for an ALJ to refuse to

order a consultative examination when a claimant requests an examination based upon a state agency expert consensus that further development of the record is appropriate. See Goff v. Colvin, No. CV 15-1078, 2016 WL 4480069, at *3 (W.D. Pa. Aug. 25, 2016).

That is precisely what occurred in the instant case. O'Neill made a specific request for consultative examinations, citing what was a complete agreement among four state agency experts that there was insufficient evidence in the record to fully assess the severity of her impairments. On these facts, the ALJ's rejection of this request constituted a derogation of the ALJ's basic duty to fully and fairly develop the record which now compels a remand.

This failure to develop the record, in turn, led to a second error on the ALJ's part. Having discounted the unanimous opinions of the state agency experts which called for further expansion of the record, the ALJ then rejected the sole treating source opinion in this case, an opinion which found that "due to the [O'Neill's] advanced scoliosis, it is advisable that [she] lift no more than 10 pounds, avoid long periods of sitting, standing and walking. Avoid crouching, bending, twisting, turning, etc." (Tr. 509). Instead, relying upon her own lay assessment of the evidence the ALJ found that the medical record was fully developed, and fashioned her own RFC for O'Neill, an RFC which was divorced from every medical opinion of record.

25

This was error in at least two ways. First, it is axiomatic that an ALJ commits reversible error when she relies upon her own lay opinion to reject clinically supported treating source opinions. See Cordero v. Kijakazi, 597 F. Supp. 3d 776, 806 (E.D. Pa. 2022). Thus, it is well settled that the ALJ may not simply substitute "her own credibility judgments, speculation or lay opinion," for the opinions of treating sources. Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). In addition, the ALJ's decision to reject *every* medical opinion in this case in favor of her own view of the evidence is particularly problematic since:

> In following this course and effectively discounting *all* medical opinions, the ALJ gave insufficient credence to the concept that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11-2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)).

Diaz v. Berryhill, 388 F. Supp. 3d 382, 398 (M.D. Pa. 2019).

Simply put, the ALJ erred by rejecting the state agency expert consensus that further development of the record was necessary in this case. The ALJ then compounded this error by also discounting the sole treating source opinion in this case and fashioning an RFC for O'Neill which was untethered to any medical opinion. This cascade of errors committed by the ALJ resulted in an RFC assessment which is unsupported by substantial evidence. Yet, while we conclude that these

errors compel a remand in this case, nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Instead, that judgment should remain to province of the ALJ once an adequate medical record is fully developed.

## IV.    <u>Conclusion</u>

Accordingly, for the foregoing reasons, the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

<u>*s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: December  3, 2025